**Brett L. Foster, 6089**
bfoster@hollandhart.com
**Mark A. Miller, 9563**
mamiller@hollandhart.com
**Richard T. Jackson, 13458**
rtjackson@hollandhart.com
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Telephone:  (801) 799-5800
Facsimile:  (801) 799-5700

*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **CYBERGUN S.A.**, a French corporation, and **FN HERSTAL, S.A.**, a Belgian Corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>**AIRSPLAT.COM**, a California company,<br><br>    Defendant. | **COMPLAINT**<br><br>Case No. 2:13-cv-00748-CW<br><br>Judge Clark Waddoups<br><br>**Jury Demand** |

Plaintiffs, Cybergun, S.A. ("Cybergun") and FN Herstal, S.A. ("FNH"), by and through their attorneys, Holland and Hart, LLP, and for its Complaint against Defendant AIRSPLAT.COM ("AirSplat"), states and alleges as follows:

### PARTIES

1. Plaintiff Cybergun is a French corporation organized and existing under the laws of Belgium with its principal place of business in Belgium.

2. Plaintiff FNH is a Belgian corporation organized and existing under the laws of Belgium with its principal place of business in Belgium.

3. Defendant AirSplat, on information and belief, is a California corporation, with its principal place of business at 3809 Durbin St., Irwindale, California 91706. AirSplat claims to be the "Nations Largest Airsoft Retailer" and owns and operates an internet retail store for airsoft guns at www.airsplat.com, through which it markets and sells various airsoft guns and related products throughout the United States, including in this judicial district. AirSplat also markets and sells its airsoft guns and related products through the online retailer www.amazon.com.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to § 39 of the Lanham Act (15 U.S.C. § 1121), as this action arises under §§ 32 and 43 of the Lanham Act. This Court has supplemental jurisdiction over the factually-related state law claims in this dispute pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over AirSplat because Defendant's misconduct giving rise to this lawsuit occurred in this district. AirSplat has purposely availed itself of the benefits of conducting business in the District of Utah and is therefore subject to the jurisdiction in this Court.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## GENERAL ALLEGATIONS

7. For many years, Plaintiff FNH has successfully marketed, manufactured and sold high quality firearms and firearm products to the consuming public and to law enforcement and military customers. In June 2010, FNH entered into a license agreement whereby Plaintiff Cybergun became the exclusive licensee to weapons manufactured by FNH in the area of airsoft

guns. Pursuant to the license agreement, Cybergun is given authority by FNH to prosecute infringement claims against third parties on behalf of or in conjunction with FNH.

**THE SCAR**

8. Since 2009, Plaintiff FNH has successfully marketed, manufactured and sold a line of assault rifles referred to as SCAR, which is short for Special Operations Forces Combat Assault Rifle.  In addition to its distinctive appearance, the SCAR line of products is renowned for its accuracy, enhanced modular trigger capable of being configured for single-stage or two-stage operation, and low-volume and magazine stoppage.

9. Since being introduced, sales of the SCAR line of assault rifles to consumers in the United States have been in the hundreds of millions of dollars.

10. Since acquiring the rights to do so, Plaintiff Cybergun has marketed and sold the SCAR airsoft gun to the consuming public. Together, FNH's SCAR firearm and Cybergun's SCAR airsoft gun are referred to herein as "Plaintiffs' SCAR guns."

11. To distinguish it from competitors, Plaintiffs' SCAR guns are uniquely configured. Plaintiffs' SCAR guns include in combination, *inter alia*, an M16 compatible pistol grip, a wedge-shaped end, front and rear sights protruding upwardly, an uninterrupted Picatinny rail on the top of the rifle, similar rails on the bottom and sides, and the gun's overall dimensions and shape.

12. Attached as Exhibit A and incorporated herein is an excerpt from product catalogues depicting Plaintiff FNH's SCAR firearm. Attached as Exhibit B and incorporated herein is an excerpt from product catalogues depicting Plaintiff Cybergun's SCAR airsoft gun.

13. Due to longstanding use dating back decades, Plaintiff FNH has acquired trademark rights in the SCAR mark, as customers have come to view products so designated as originating from or associated with FNH. Plaintiff FHN owns a United States trademark registration (U.S. Trademark Registration No. 4,100,728) for the mark SCAR in connection with toy replica guns. A copy of FNH's trademark registration for the SCAR mark is attached as Exhibit C.

### THE M249 MKII AND M249 PARA

14. For decades, Plaintiff FNH has successfully marketed, manufactured and sold a line of light machine guns referred to by the names MINIMI and/or M249 ("M249"). Plaintiff FNH has sold, among others, two versions of the M249, one of which is sold under the M249 trademark, and the other of which is sold under the trademark M249 PARA. In addition to distinctive appearance, the M249 line of products is known for its manually adjustable gas valve and its ability to be instantly changed from belt feed to magazine feed without any modification.

15. Since being introduced, sales of the M249 line of light machine guns to consumers in the United States have been in the hundreds of millions of dollars.

16. Since acquiring the rights to do so, Plaintiff Cybergun has marketed and sold two versions of the M249 airsoft gun to the consuming public: the M249 MKII and M249 PARA. Together, FNH's M249 firearms and Cybergun's M249 airsoft guns are referred to herein as "Plaintiffs' M249 guns."

17. To distinguish it from competitors, Plaintiffs' M249 guns are uniquely configured. Plaintiffs' M249 guns include in combination, *inter alia*, a pistol grip having lateral grooves, a contoured carrying handle extending from the top of the barrel, a groove where the

stock widens, a rounded portion that protrudes in the upper portion of the rear of the stock, a rear aperture sight, and the gun's overall dimensions and shape.  Plaintiffs' M249 PARA guns include in combination, *inter alia*, a pistol grip having lateral grooves, a contoured carrying handle extending from the top of the barrel, two rods coupled by a bridge to form the stock at the rear of the gun, the bridge having an additional circular opening on a visible interior portion, a rear aperture sight, and the gun's overall dimensions and shape.

18. Attached as Exhibit D and incorporated herein is an excerpt from product catalogues depicting Plaintiff FNH's M249 firearms.  Attached as Exhibit E and incorporated herein is an excerpt from product catalogues depicting Plaintiff Cybergun's M249 airsoft guns.

19. Due to longstanding use dating back decades, Plaintiff FNH has acquired trademark rights in the marks MINIMI, M249, M249 MKII and M249 PARA, as customers have come to view products so designated as originating from or associated with FNH.  Plaintiff Cybergun uses the marks MINIMI, M249 MKII and M249 PARA on its M249 guns under license from Plaintiff FNH.

**THE P90**

20. Since approximately 1990, Plaintiff FNH has also successfully marketed, manufactured and sold a line of personal defense weapons referred to as the FN P90, which name is derived from the year it was introduced.  In addition to its distinctive appearance, the P90 is renowned for being ambidextrous and maneuverable in tight spaces.

21. Since being introduced, sales of the P90 rifles to consumers in the United States have been in the hundreds of millions of dollars.

22.     Since acquiring the rights to do so, Plaintiff Cybergun has marketed and sold the P90 airsoft gun to the consuming public.  Together, FNH's P90 firearm and Cybergun's P90 airsoft gun are referred to herein as "Plaintiffs' P90 guns."

23.     To distinguish it from competitors, Plaintiffs' P90 guns are uniquely configured. Plaintiffs' P90 guns include in combination, *inter alia*, a thumbhole acting as a pistol grip, an oversized trigger guard, smooth contours, bullpup configuration, a horizontally mounted feeding system, and the gun's overall dimensions and shape.

24.     Attached as Exhibit F and incorporated herein is an excerpt from product catalogues depicting Plaintiff FNH's P90 firearm. Attached as Exhibit G and incorporated herein is an excerpt from product catalogues depicting Plaintiff Cybergun's P90 airsoft gun.

25.     Due to longstanding use dating back decades, Plaintiff FNH has acquired rights in the mark P90, as customers have come to view products so designated as originating from or associated with FNH.  Plaintiff FNH has obtained a trademark registration in the United States for its mark P90.  A copy of U.S. Trademark Registration No. 1,994,751 is attached as Exhibit H. Plaintiff Cybergun sells its licensed version of the gun under license of the P90 mark.  Plaintiffs' registration for P90 is incontestable and constitutes prima facie evidence of the validity of the P90 mark.

26.     Plaintiffs have enjoyed considerable success in marketing Plaintiffs' guns cloaked with the trademarks and distinctive trade dress set out above.  This includes sales of the above-listed firearms to branches of the United States military and various law enforcement agencies, as well as sales of the airsoft guns to the consuming public.

27. Through considerable investment, advertising, marketing and sales, the public has come to know and associate Plaintiffs as the sole source of high quality, distinctive guns, listed herein.

### AIRSPLAT'S ACTS

28. AirSplat advertises and sells airsoft gun products through its website www.airsplat.com and via the online retailer www.amazon.com.

29. This is not the first Complaint that Plaintiffs have had to file against AirSplat. In June 2012, Plaintiffs filed a complaint ("the 2012 Complaint") in Case No. 2:12-cv-558-DB (D. Utah), which involved the same parties and similar allegations. The 2012 Complaint was never served as the parties came to an understanding that AirSplat would cease its infringing activities.

30. Nothwithstanding the agreement arrived at in 2012, among the airsoft guns Airsplat presently sells are unlicensed and unauthorized SCAR knock-offs (*see* Exhibits I, J, K), unlicensed and unauthorized P90 knock-offs (*see* Exhibits L, M), and unlicensed and unauthorized M249 knock-offs (*see* Exhibits N, O), (collectively the "accused airsoft guns").

31. The SCAR knockoffs that Airsplat markets and sells infringe on Plaintiffs' trade dress and design rights by, among other things, misappropriating the ornamental features and configuration of the SCAR design. *Compare* Exhibits I, J, & K with Exhibits A & B.

32. The P90 knockoffs that Airsplat markets and sells infringe on Plaintiffs' trade dress and design rights by, among other things, misappropriating the ornamental features and configuration of the P90 design. *Compare* Exhibits L & M with Exhibits F & G.

6337615_1

33. The M249 knockoffs that Airsplat markets and sells infringe on Plaintiffs' trade dress and design rights by, among other things, misappropriating the ornamental features and configuration of the M249 design. *Compare* Exhibits N & O with Exhibits D & E.

34. In addition to marketing and selling guns that incorporate the proprietary trade dress of Plaintiffs' SCAR, P90, and M249 guns, Airsplat utilizes the SCAR, P90, and M249 trademarks in connection with its advertising and sale of these accused airsoft guns.

35. By offering the accused airsoft guns for sale, as set forth above, Defendant infringes Plaintiffs' trade dress and trademark rights. The configuration of AirSplat's knockoff products—the total product and overall impression of each product, its size, shape, configuration, and design—is likely to cause confusion in the marketplace with Plaintiffs' trade dress as to the source, origin, or sponsorship of the products.

36. Airsplat's use of the SCAR, P90, and M249 marks is also likely to cause confusion in the marketplace as to the source, origin, or sponsorship of the accused airsoft guns that Airsplat sells.

37. In view of all of Airsplat's actions, as set forth above, consumers are likely to be mislead, be deceived, and mistakenly believe that FNH and/or Cybergun authorizes, licenses, approves, or is otherwise affiliated with Airsplat's advertising and sale of the accused airsoft guns addressed herein.

38. On information and belief, Defendant AirSplat knowingly and intentionally advertised and sold unauthorized replicas of Plaintiffs' proprietary gun designs and used Plaintiffs' trademarks in an attempt to take unfair advantage of and trade off the reputation and goodwill of Plaintiffs, which has been established over many years in the industry.

8

39. Plaintiffs have not approved AirSplat's use or misappropriation of Plaintiffs' trade dress or design, or of Plaintiffs' trademarks.

40. The natural, probable, and foreseeable result of AirSplat's wrongful conduct will deprive Cybergun of the commercial benefits of Plaintiffs' trade dress and design, will deprive Cybergun of other business opportunities, will deprive Plaintiffs of goodwill, and will injure Plaintiffs' relations with present and prospective customers.

41. Plaintiffs are informed and believe that, unless enjoined by this Court, AirSplat intends to continue its course of conduct to wrongfully use, infringe upon, sell or otherwise profit from Plaintiffs' trade dress and design. As a direct and proximate result of AirSplat's acts, as alleged above, Plaintiffs have and will suffer irreparable damage and sustain lost profits.

42. Plaintiffs have no adequate remedy at law to redress all of the injuries AirSplat has caused, and intended to cause, by its conduct. Plaintiffs will continue to suffer irreparable injury and sustain lost profits unless AirSplat's actions, as alleged above, are enjoined by this Court.

### FIRST CAUSE OF ACTION
#### (TRADE DRESS INFRINGEMENT—LANHAM ACT § 43(a))

43. Plaintiffs hereby incorporate all of the foregoing allegations as if set forth in full herein.

44. Plaintiffs are entitled to legal protection of their trade dress under § 43(a) of the Lanham Act, which trade dress includes the total or overall impression of Plaintiffs' SCAR guns, Plaintiffs' M249 guns, and Plaintiffs' P90 guns, derived from their unique configuration, size, shape, design, as Plaintiffs' guns are presented to the consuming public.

45. The accused airsoft guns that AirSplat markets and sells so closely imitate and/or copy the trade dress of Plaintiffs' guns such that there is a likelihood of confusion among the consuming public as to the source, origin, or sponsorship of the accused airsoft guns. The consuming public will erroneously believe that Airsplat's guns come from Plaintiffs or are licensed, approved or sponsored by Plaintiffs.

46. By using Plaintiffs' trade dress in the configuration of the accused airsoft guns and related advertising, as alleged above, AirSplat has infringed upon Plaintiffs' trade dress, trademarks and goodwill.

47. On information and belief, AirSplat's copying of Plaintiffs' trade dress was intentional, and in bad faith. AirSplat intended to market and sell airsoft guns confusingly similar in appearance to Plaintiffs' proprietary gun designs in direct competition with Cybergun to consumers searching for Plaintiffs' SCAR, P90, and M249 designs.

48. The accused airsoft guns and Plaintiffs' guns are strikingly similar, substantially duplicated, virtually identical, substantially identical, remarkably similar, essentially duplicated and/or closely imitated.

49. AirSplat's acts of trade dress infringement have caused and continue to cause damages and injury to Plaintiffs.

50. Plaintiffs may recover for their damages an award to compensate Plaintiffs for the injuries and damages they has sustained as a result of AirSplat's conduct which violates § 43(a) of the Lanham Act.

51. Because AirSplat's acts were intentional, willful, and/or deliberate, Plaintiffs are entitled to an award of treble damages under § 43(a) of the Lanham Act.

52. Plaintiffs are entitled to an award of pre-judgment interest for damages sustained as a result of the AirSplat's wrongful conduct.

53. AirSplat's wrongful, malicious, fraudulent, deliberate, willful, intentional and/or incredible conduct makes this case an exceptional case, entitling Plaintiffs to an award of attorneys' fees and costs under the Lanham Act.  15 U.S.C. § 1117(a).

54. Plaintiffs have no adequate remedy at law, have suffered and continue to suffer irreparable harm as a result of AirSplat's acts, and are therefore entitled to a preliminary and permanent injunction to enjoin AirSplat's wrongful conduct.

## SECOND CAUSE OF ACTION
(FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING—LANHAM ACT § 43(a))

55. Plaintiffs hereby incorporates all of the foregoing allegations as if set forth in full herein.

56. The foregoing uses by AirSplat of Plaintiffs' trade dress in connection with AirSplat's attempt to sell infringing airsoft guns constitutes false designations of origin, false or misleading descriptions of fact, and false or misleading misrepresentations of fact which are likely to cause confusion or cause mistake or to deceive as to the affiliation, connection, or association of AirSplat with Plaintiffs, or as to the origin, sponsorship or approval of AirSplat's products and business activities by Plaintiffs.

57. AirSplat's use and commercial advertising of Plaintiffs' trade dress misrepresent the nature, characteristics, qualities, or geographic origin of AirSplat's goods, services and commercial activity.  These actions relate to the interstate marketing of AirSplat's infringing products.

58. AirSplat's actions are affirmatively misleading, partially incorrect, or false because they fail to disclose material facts. These actions have caused or will cause actual deception or at least a tendency to deceive a substantial portion of the consuming public, are likely to affect purchasing decisions, and are likely to cause injury to Plaintiffs' goodwill.

59. By so acting, AirSplat has violated § 43(a) of the Lanham Act.

60. AirSplat's acts of infringement have caused and continue to cause damages and injury to Plaintiffs, for which Plaintiffs must be fully compensated.

61. AirSplat's uses of Plaintiffs' trade dress have been with full knowledge of Plaintiffs' rights; such infringing activities of AirSplat are willful and intentional, making this case exceptional within the meaning of the Lanham Act, thereby justifying an award of treble damages, attorneys' fees and pre-judgment interest.

62. Plaintiffs have no adequate remedy at law, have suffered and continue to suffer irreparable harm as a result of AirSplat's acts, and are therefore entitled to a preliminary and permanent injunction to enjoin AirSplat's wrongful conduct.

### THIRD CAUSE OF ACTION
### (TRADEMARK INFRINGEMENT—LANHAM ACT §§ 32, 43)

63. Plaintiffs hereby incorporate all of the foregoing allegations as if set forth in full herein.

64. AirSplat has infringed Plaintiff FNH's registered trademarks P90 and SCAR by marketing and selling airsoft guns under the identical P90 and SCAR marks. In addition, AirSplat has improperly used the designation M249 in connection with its knockoff of Plaintiffs' M249 guns.

65. AirSplat's unauthorized use of Plaintiffs' trademarks has actually or has the capacity to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of AirSplat's airsoft gun products with Plaintiffs or as to the origin, sponsorship or approval of AirSplat's airsoft gun products by Plaintiffs.

66. AirSplat's unauthorized use of Plaintiffs' trademarks in interstate commerce has been and will continue to be material and likely to influence consumer' purchasing decisions.

67. On information and belief, AirSplat's use of Plaintiffs' trademarks was intentional, and in bad faith.

68. AirSplat's conduct, including as described above, constitutes trademark infringement in violation of 15 U.S.C. § 1114(a) and/or § 1125(a).

69. Plaintiffs may recover for their damages an award to compensate Plaintiffs for the injuries and damages they have sustained as a result of AirSplat's conduct.

70. Plaintiffs have no adequate remedy at law, have suffered and continue to suffer irreparable harm as a result of AirSplat's acts, and are therefore entitled to a preliminary and permanent injunction to enjoin AirSplat's wrongful conduct.

**FOURTH CAUSE OF ACTION**
(UNFAIR COMPETITION—COMMON LAW)

71. Plaintiffs hereby incorporate all of the foregoing allegations as if set forth in full herein.

72. In taking the above actions, AirSplat has participated in unfair competition and unfair business practices. The actions as alleged above, constitute a misappropriation and infringement of Plaintiffs' trade dress rights in Plaintiffs' SCAR, P90, and M249 guns and

accompanying goodwill and reputation under the Lanham Act, federal common law and the common law of the State of Utah, and constitute acts of unfair competition.

73. As alleged above, Plaintiffs have distinctive and protectable rights. AirSplat's actions cause a likelihood of confusion among consumers in the marketplace and therefore constitute unfair competition.

74. AirSplat's acts of willful and intentional infringement have caused and continue to cause damages and injury to Plaintiffs for which Plaintiffs must be compensated.

## FIFTH CAUSE OF ACTION
### (UNJUST ENRICHMENT, DISGORGEMENT AND CONSTRUCTIVE TRUST)\

75. Plaintiffs hereby incorporate all of the foregoing allegations as if set forth in full herein.

76. Plaintiffs are informed and believe that AirSplat has generated and enjoyed, or will generate and enjoy, substantial profits and goodwill as a result of the wrongful conduct alleged above. AirSplat is aware of the profits and goodwill it has enjoyed as a result of its use of Plaintiffs' proprietary designs and trademarks.

77. It would be unjust to allow Airsplat to retain the benefits and profits derived from its wrongful use of Plaintiffs' proprietary designs and trademarks.

78. As a result of AirSplat's infringement of Plaintiffs' trade dress and trademark rights, and AirSplat's unfair competition, Plaintiffs have been damaged, and AirSplat has been unjustly enriched. Such unjust enrichment continues to increase as the profits from AirSplat's wrongful conduct accumulates.

79. To the extent of AirSplat's unjust enrichment, Plaintiffs are entitled to disgorgement of all ill-gotten gains and are entitled to the imposition of a constructive trust over all property or money in AirSplat's control or possession as a result of its wrongful conduct.

## JURY DEMAND

Plaintiffs hereby demand that all claims or causes of action raised in this Complaint be tried by a jury to the fullest extent possible under the United States and Utah Constitutions, statutes and laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that this Court:

A. Preliminarily and permanently enjoin and restrain AirSplat, its officers, directors, principals, agents, servants, employees, successors and assigns, and all those in active concert or participation with it from all acts of trade dress infringement, false designation and advertising, trademark infringement, unfair competition, copyright infringement, deceptive trade practices or any other wrongful conduct alleged in this Complaint;

B. Preliminarily and permanently enjoin and restrain AirSplat, its officers, directors, principals, agents, servants, employees, successors and assigns, and all those in active concert or participation with them from making, advertising, using, and/or selling the accused airsoft guns and any airsoft or other gun that incorporates Plaintiffs' SCAR, P90, or M249 trade dress, or any other product that is the substantial equivalent to the such products in overall design and appearance;

C. Preliminarily and permanently enjoin and restrain AirSplat, its officers, directors, principals, agents, servants, employees, successors and assigns, and all those in active concert or

participation with them from using the marks SCAR, P90, M249, M249 PARA, M249 MKII, and M249 MINIMI in connection with the sale or advertising of airsoft guns or any other similar product;

  D. Order AirSplat to account for and relinquish to Plaintiffs all gains, profits, and advantages derived by AirSplat through its unlawful conduct complained of in this Complaint;

  E. Order AirSplat to pay Plaintiffs such damages as they have sustained as a consequence of AirSplat's wrongful conduct complained of in this Complaint;

  F. Order AirSplat to pay Plaintiffs treble damages under § 43(a) of the Lanham Act for AirSplat's deliberate and willful misconduct;

  G. Order AirSplat to pay Plaintiffs punitive damages for AirSplat's deliberate and willful misconduct;

  H. Order AirSplat to destroy all labels, signs, prints, packages, wrappers, receptacles, and advertisements in their possession bearing Plaintiffs' trade dress or trademarks, and to destroy any reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' SCAR guns, Plaintiffs' M249 guns, and Plaintiffs' P90 guns, and destroy all plates, molds, matrices, and other means of making the same pursuant to § 36 of the Lanham Act;

  I. Order AirSplat to disgorge all of their ill-gotten gains to the extent of its unjust enrichment as a result of its wrongful conduct complained of in this Complaint, and the imposition of a constructive trust upon any or all property and money that is in AirSplat's possession and control as a result of its wrongful conduct complained of in this Complaint;

  J. Order AirSplat to pay Plaintiffs' costs of this action, together with reasonable attorneys' fees consistent with the Lanham Act; and

K.     Award Plaintiffs such further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated:  August 7, 2013.

                              HOLLAND & HART LLP


                              /s/  Richard T. Jackson
                              Brett L. Foster
                              Mark A. Miller,
                              Richard T. Jackson
                              *Attorneys for Plaintiffs*

## Index of Exhibits

Exhibit A        FNH SCAR

Exhibit B        Cybergun SCAR

Exhibit C        SCAR TM Registration

Exhibit D        FNH M249 and M249 PARA

Exhibit E        Cybergun M249 and M249 PARA

Exhibit F        FNH P90

Exhibit G        Cybergun P90

Exhibit H        P90 TM Registration

Exhibit I        Airsplat Boyi Dboys Mk16 Black Webpage

Exhibit J        Airsplat AGM 055 Mk16 Black Webpage

Exhibit K        AirSplat JLS Mk16 Tan Webpage

Exhibit L        Amazon Kart Airsoft P90 Electric Gun – Kart KSP90 AEG Webpage

Exhibit M        Airsplat Search for P90 Webpage

Exhibit N        Airsplat A&K LMG II Webpage

Exhibit O        Airsplat A&K LMG P Webpage